## ASHER v. UNITED STATES.
### No. 7900-RJ.

District Court, S. D. California,
Central Division.

Aug. 4, 1939.

Claude I. Parker, of Los Angeles, Cal., for plaintiff.

Ben Harrison, U. S. Atty., and Armond M. Jewell, Asst. U. S. Atty., both of Los Angeles, Cal.

JENNEY, District Judge.

This was a suit by a taxpayer brought under the Tucker Act to recover taxes alleged to have been overpaid. Judgment was rendered for defendant with costs. In computing the cost bill, defendant included a $5 clerk's filing fee, a fifty cent fee for taking an acknowledgment, and a $10 attorney's docket fee, which items of cost were disallowed by the clerk. Defendant now moves to re-tax the costs, and the correctness of the clerk's ruling is before this court.

Section 15 of the Tucker Act is conceded by counsel to be controlling in this matter, Act of March 3, 1887, c. 359, § 15, 24 Stat. 508, as re-enacted Jud.Code, § 152, Act of March 3, 1911, c. 231, § 152, 36 Stat. 1138, 28 U.S.C.A. § 258. United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746, but the issue here is the correct interpretation of the statute. Section 15 provides: "If the Government of the United States shall put in issue the right of the plaintiff to recover, the court may, in its discretion, allow costs to the prevailing party from the time of joining such issue. Such costs, however, shall include only what is actually incurred for witnesses, and for summoning the same, and fees paid to the clerk of the court."

A careful reading of that statute discloses that while witnesses' expenses, actually incurred, may be taxable as costs, only fees paid to the clerk may be so taxed. Presumably, all that is required,—in connection with expenses incident to bringing in witnesses,—is a definite agreement to cover such expenses. But in the case of the clerk's fees, payment in fact is prerequisite to taxing such items as costs.

The United States is of course exempted from the necessity of paying fees to the clerk. Act Feb. 11, 1925, c. 204, § 1, 43 Stat. 857, 28 U.S.C.A. § 548. It is conceded also by counsel that no fees in fact were paid to the clerk upon the filing of the Government's answer in this case.

Accordingly, the plain words of the statute would seem to indicate that the $5 item was not properly taxable by the Government as the prevailing party. To avoid this conclusion, the United States Attorney offers three arguments. He first points out that, traditionally, the United States has been permitted to recover costs in the trial courts in civil actions, Pine River Logging & Improvement Co. v. United States, 186 U.S. 279, 280, 296, 22 S.Ct. 920, 46 L.Ed. 1164; United States v. Verdier, 164 U.S. 213, 219, 17 S.Ct. 42, 41 L.Ed. 407; United States v. Minneapolis, St. P. & S. S. M. R. Co., D.C., 235 F. 951; United States v. Jardine, 5 Cir., 81 F.2d 747, even though it was not itself

liable for costs when the private litigant prevailed. United States v. Barker, 2 Wheat. 395, 4 L.Ed. 271; United States v. Chemical Foundation, 272 U.S. 1, at page 20, 47 S.Ct. 1, 71 L.Ed. 131; United States v. Worley, 281 U.S. 339, 50 S.Ct. 291, 74 L.Ed. 887.

The United States, by Section 15 of the Tucker Act, he urges, waived to a limited extent its immunity from cost liability, but it still retained its former latitude in collecting costs. Such a reading of the Act, however, is incomplete. The statute clearly limits the costs recoverable by the "prevailing party", regardless of whether that may be the private litigant or the United States. Its provisions apply with equal force to either party to suits brought under the Act.

The second argument of Government's counsel is based on the decision of the Supreme Court of the United States in Gulf Refining Co. v. United States, 269 U.S. 125, 139, 46 S.Ct. 52, 70 L.Ed. 195; cf. United States v. Hunsicker, 5 Cir., 298 F. 278, where, in a suit instituted by the government, the question arose as to whether or not the United States might collect from the private litigant, as costs, the one percent commission charged by the clerk for holding deposited funds, pursuant to R.S. § 828; Act of June 28, 1902, c. 1301, § 1, 32 Stat. 476; Act of Feb. 11, 1925, c. 204, § 8, 43 Stat. 858, 28 U.S.C.A. § 555, subd. 8. The Government was of course exempted by statute from the payment of such commissions. Act of Feb. 11, 1925, c. 204, § 1, 43 Stat. 857, 28 U.S.C.A. § 548. The Supreme Court permitted the United States to recover the commission as an item of costs, because, as it stated, after the clerks were taken off a fee basis of compensation and placed on a salary basis, the Government was deemed to have stepped into the shoes of the clerks for the purpose of collecting the fees.

■ Sound and convincing as is the reasoning of that opinion, it should not control here, since the Gulf Refining Co. case was not a suit brought under the Tucker Act. In the case at bar, this court is confronted with a clear statutory definition. Even though the Supreme Court felt justified in doing what it did in a situation not regulated by express statute, that decision should not set a precedent for this court in the face of a clear expression of the wishes of Congress, in a matter properly within legislative control.

The Government's third argument is this: Before and at the time the Tucker Act was first passed in 1887, and for some thirty-odd years thereafter, the United States had to pay fees to the clerk the same as all individuals. Consequently, Congress understood, and the Tucker Act may be deemed to have intended, that the United States should have the same right to collect costs—when it was the prevailing party—as the private litigant did when he prevailed. While the Act of 1925 exempted the United States from the payment of clerk's fees, it did not by its terms repeal or amend the Tucker Act, nor did it alter the intention of that earlier statute.

■ The best answer to this third argument is that Congress, at the time it passed the Act of 1925, well knew what the Tucker Act intended and provided and, knowing that thereunder prevailing parties could only recover as costs fees actually paid the clerk, Congress, by eliminating the requirement of paying fees, permitted the United States to recover fewer items of costs.

■ The conclusion accordingly seems inescapable that the United States cannot under Section 15 of the Tucker Act collect as costs what it did not actually pay to the clerk. This result is re-enforced somewhat by the doubt in this court's mind as to the exact meaning of the phrase "from the time of joining such issue" contained in that act. Ordinarily, issue is joined upon the filing of an answer. Hence, a fee paid the clerk prior to or at the time of filing an answer might not be one paid "from the time of joining such issue". However, inasmuch as counsel did not discuss the point, and the conclusion of the court already rests on a ground found to be substantial, it seems unnecessary to pass on this point.

The ruling of the clerk, in disallowing as taxable costs the item of the $5.00 filing fee for the answer, was correct and is hereby confirmed.

The attorney's docket fee presents a somewhat different situation. As a matter of practice in this district, the prevailing party in civil cases has collected directly from the losing party, as an item of costs, an attorney's docket fee of varying amount. In non-jury civil cases, such as the case at bar, this fee amounts to $10. R.S. § 823; Act May 28, 1896, c. 252. §

6, 29 Stat. 179; Act Feb. 26, 1919, c. 49, § 1, 40 Stat. 1182; Act Feb. 11, 1921, c. 46, 41 Stat. 1099; and R.S. § 824, as amended August 3, 1935, c. 431, § 1, 49 Stat. 513, 28 U.S.C.A. §§ 571, 572.

■ Historically, at the very ancient common law, costs and fees of this nature went to the Crown as a penalty against a losing plaintiff for bringing a "false" suit. The purpose was to discourage ill-founded litigation. Later, costs and fees, including those of the attorneys, were awarded —not to the Crown but to the prevailing party, and for a similar reason—to prevent false suits. 2 Bl.Comm. 439, 3 Bl. Comm. 188, 357, 399, 451. 17 Amer.L. Reg. 693. As the penalty phases of the law were relaxed, the newly recognized purpose of compensating the prevailing party became well established, and gradually supplanted the older and stricter objective. Such was the purpose behind the early colonial and state enactments as to costs, and such was the background of the first statutes regarding costs in the federal courts. Act of 1793, c. 20, § 4, 1 Stat. at Large, 333; Act of 1796, c. 11, 1 Stat. at Large, 451. Consequently, the payment of the attorney's docket fee was not a matter between the clerk and a party. It was a question between party and party. Goodyear v. Sawyer, 1883, C.C., 17 F. 2. Its purpose was not to pay the clerk for his pains, but the attorney in part at least for his work.

■ Section 571 of Title 28 U.S.C.A. provides: "The following fees and no other shall be taxed and allowed to * * * district attorneys, except in cases otherwise expressly provided by law. * * *" This indicates that docket fees were to be considered as a part of the compensation of the United States attorneys. When the Congress placed United States attorneys on a salary basis, it did not authorize discontinuing the collection of attorney's docket fees authorized by Sections 571 and 572. It provided, rather, that the docket fee should be collected by the clerk and by him paid into the Treasury of the United States. Thus Section 578 states, " * * * all fees and emoluments authorized by law to be paid to United States district attorneys * * * shall be charged and collected, as far as possible, and paid to the clerk of the court having jurisdiction, and by him covered into the Treasury of the United States. * * *"

It therefore appears that the Congress intended to change the traditional theory of attorney's docket fees and alter the basis upon which their collection was predicated. In any event the clerk is now by statute specifically authorized to tax as costs against the unsuccessful party, the attorney's docket fee formerly payable to the United States attorneys and to require the unsuccessful party to pay the amount thereof directly to the clerk.

■ Consequently the court holds that this item of costs should have been allowed by the clerk in the case at bar, since the item is one "paid to the clerk" within the meaning of Section 15 of the Tucker Act (28 U.S.C.A. § 258). This interpretation of Section 578 is reenforced by the provisions of Section 589 of Title 28, which provides that nothing in Section 578 (inter alia) shall be construed to affect the amount or prevent the taxation of costs against the unsuccessful party in civil proceedings.

■ The fifty cent item arose when the United States Attorney acknowledged or verified before the Clerk of the Court the cost bill presented by the United States. 28 U.S.C.A. § 555, subd. 4; R.S. § 828; Act of June 28, 1902, c. 1301, § 1; 32 Stat. 476; Act of Feb. 11, 1925, c. 204, § 8, 43 Stat. 858. This fee was not charged against nor paid by the United States. 28 U.S.C.A. §§ 548, 555. Consequently, it must, like the first of the preceding items, be disallowed.

The court's conclusions above expressed, in so far as the same are applicable, coincide with those reached by our distinguished colleague, Judge Hollzer, in his decision (without opinion) in the case of Southwestern Portland Cement Co. v. United States, D.C., No. 7244-H. As no reasons were given upon which that decision was predicated, the United States Attorney has requested a formal opinion by this court in order that the same might be made a part of a record on appeal. This request was not granted in the earlier case because the time for appeal therein had been permitted to expire.

The rulings of the clerk, in disallowing to the Government the item of the filing fee and the charge for the acknowledgement, are hereby approved. The ruling of the clerk refusing to allow to the Government the attorney's docket fee is hereby disapproved. So ordered.